**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| RICHARD CORTEZ, ) | No. ED CV 12-413-PLA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 28, 2012, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 12, 2012, and April 13, 2012.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 11, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 9, 1961. [Administrative Record ("AR") at 46.]  He has a high school education [AR at 130] and past relevant work experience as a fast food attendant and a fast food porter.  [AR at 126, 144-50.]

On March 3, 2009, plaintiff protectively filed his application for Supplemental Security Income payments and filed his application for Disability Insurance Benefits, alleging that he has been unable to work since March 1, 2009, due to kidney failure and a knee problem.  [AR at 46-49, 103-16, 124-31, 138-43.]  After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 50-53, 55, 58-65.]  A hearing was held on April 1, 2010, at which time plaintiff appeared without counsel and testified on his own behalf.  A third party witness also testified.  [AR at 23-45.]  On June 29, 2010, the ALJ determined that plaintiff was not disabled.  [AR at 13-19.]  On February 6, 2012, the Appeals Council denied plaintiff's request for review.  [AR at 1-4.]  This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

2

1   must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

2   53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

3

4                                              **IV.**

5                          **THE EVALUATION OF DISABILITY**

6         Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

7   to engage in any substantial gainful activity owing to a physical or mental impairment that is

8   expected to result in death or which has lasted or is expected to last for a continuous period of at

9   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

10

11  **A.    THE FIVE-STEP EVALUATION PROCESS**

12        The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

13  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

14  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

15  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

16  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

17  substantial gainful activity, the second step requires the Commissioner to determine whether the

18  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

19  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

20  If the claimant has a "severe" impairment or combination of impairments, the third step requires

21  the Commissioner to determine whether the impairment or combination of impairments meets or

22  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

23  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

24  If the claimant's impairment or combination of impairments does not meet or equal an impairment

25  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

26  sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

27  and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

28  past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date, March 1, 2009. [AR at 15.][1]  At step two, the ALJ concluded that plaintiff has the severe impairments of: chronic alcohol abuse, in remission by history, with alcoholic liver disease; level III obesity; and degenerative joint disease of the right knee.  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments in the Listing. [AR at 16.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[3] "except standing or walking six hours in an eight-hour workday with customary breaks[;] sitting six hours in an eight-hour workday with customary breaks[;] balancing, climbing, stooping, kneeling, crouching, or crawling occasionally[;] no ladder, rope, or scaffold climbing[;] no frequent or prolonged exposure to extreme cold[;] no frequent or prolonged exposure to vibration[;] and no frequent or prolonged

[1]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013.  [AR at 15.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   20 C.F.R. §§ 404.1567(b), 416.967(b) define "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

1   exposure to hepatotoxins."[4] [AR at 16.] At step four, the ALJ concluded that plaintiff is capable

2   of performing his past relevant work as a fast food restaurant worker. [AR at 18.] In the

3   alternative, the ALJ determined at step five that there are other jobs that exist in significant

4   numbers in the national economy that plaintiff can perform. [AR at 18-19.] Accordingly, the ALJ

5   concluded that plaintiff has not been under a disability from March 1, 2009, to June 29, 2010, the

6   date of the decision. [AR at 19.]

7

8                                                    **V.**

9                                         **THE ALJ'S DECISION**

10          Plaintiff contends that the ALJ failed to: (1) fully and fairly develop the vocational evidence,

11   and (2) properly evaluate plaintiff's credibility. [Joint Stipulation ("JS") at 3.] As set forth below,

12   the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

13

14   **A.   PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

15          "To determine whether a claimant's testimony regarding subjective pain or symptoms is

16   credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028,

17   1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented

18   objective medical evidence of an underlying impairment 'which could reasonably be expected to

19   produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344

20   (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the

21   claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively

22   suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons

23   for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504

24   F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be

25   considered in weighing a claimant's credibility include: (1) the claimant's reputation for

26

27   _____

28          [4]   A "hepatotoxin" is "a toxin that destroys liver cells." Dorland's Illustrated Medical Dictionary,
     at 810 (29th ed. 2000).

truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

At his hearing before the ALJ, plaintiff testified that his cirrhosis of the liver causes him pain on his "right side" and abdominal swelling.  [AR at 28-29, 31.]  Plaintiff further testified that he has pain in his right knee that is always present and that is aggravated when he stands.  [AR at 32.]  Plaintiff stated that due to his pain, he can only be on his feet for 15 minutes at a time and can only walk "maybe 20 feet" at a time.  [AR at 34.]  Plaintiff also stated that he can only sit for 30 minutes at a time, and does not know how much he can lift.  [Id.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  [AR at 17.]  The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC findings for plaintiff]."  [Id.]  At step two, whether or not the ALJ found that plaintiff was malingering,[5] the ALJ gave a reason supported by substantial evidence to discount plaintiff's subjective symptom testimony.  See Lingenfelter, 504 F.3d at 1036 (where "there is no evidence of malingering," the ALJ must offer "specific, clear and convincing reasons" for rejecting the plaintiff's subjective symptom testimony).  To conclude that a claimant is less than fully credible, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is

---

[5]   The ALJ stated in his decision that "[plaintiff's] limits are grossly exaggerated and rebutted by the State agency medical consultants, the consultative medical examiner, and the ... medical expert [noted] above."  [AR at 18.]  Thus, it is not entirely clear whether the ALJ found that plaintiff was malingering based on the findings and opinions of these physicians, or merely discounted plaintiff's credibility on that basis without finding that plaintiff was malingering.  Nevertheless, the Court need not reach this issue because in either event the ALJ provided a clear and convincing reason to discount plaintiff's credibility, discussed infra.

1  not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157

2  F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

3        Among other reasons for discounting plaintiff's subjective symptom testimony, the ALJ

4  found that plaintiff's statements concerning his limitations were "rebutted by the State agency

5  medical consultants, the consultative medical examiner, and the ... medical expert [who completed

6  a Medical Interrogatory Physical Impairment(s) form concerning plaintiff on May 20, 2010]." [AR

7  at 17-18.]  On June 15, 2009, consultative examiner Dr. Sandra M. Eriks conducted a physical

8  examination and a neurological examination of plaintiff, and reviewed blood work and an x-ray of

9  plaintiff's right knee.  [AR at 220-24.]  Based on her examination, Dr. Eriks opined that plaintiff: "is

10  able to lift and carry 25 pounds occasionally and 10 pounds frequently.  He can stand and/or walk

11  6 hours out of an 8-hour workday.  He can sit 6 hours out of an 8-hour workday. ...  There are no

12  postural, manipulative, visual, communicative or environmental limitations." [AR at 223.]  On July

13  1, 2009, State Agency physician S. Brodsky completed a Physical Residual Functional Capacity

14  Assessment for plaintiff, in which Dr. Brodsky opined that plaintiff can lift 20 pounds occasionally

15  and 10 pounds frequently; can stand and/or walk about 6 hours in an 8-hour workday; can sit

16  about 6 hours in an 8-hour workday; can occasionally balance, stoop, kneel, crouch, crawl, and

17  climb ramps or stairs; can never climb ladders, ropes, or scaffolds; must avoid concentrated

18  exposure to extreme cold, vibration, fumes, odors, dusts, gases, and poor ventilation; and must

19  avoid hepatotoxins. [AR at 228-32.]  On the same day, Dr. Brodsky concluded that plaintiff "is able

20  to sustain LIGHT [physical] RFC level performance with normal breaks over a 40[-hour]

21  [work]week." [AR at 233-35.]  On October 5, 2009, a different State Agency physician, P. Ombres,

22  completed a case analysis in which Dr. Ombres disagreed with a previous physician's opinion that

23  plaintiff is "capable of sustaining medium physical exertion," and affirmed the opinion that plaintiff

24  retains the RFC for "light physical exertion with postural restrictions." [AR at 236-37.]  Finally, on

25  May 20, 2010, medical expert Dr. John R. Morse completed a Medical Interrogatory Physical

26  Impairment(s) form concerning plaintiff.  [AR at 323.]  Dr. Morse opined that plaintiff can lift 10

27  pounds frequently and 20 pounds occasionally; sit for 6 hours in an 8-hour workday; stand and/or

28

1    walk for 6 hours in an 8-hour workday; climb, stoop, kneel, and crouch occasionally; and must

2    avoid scaffolds and ladders.  [Id.]

3    All four examining and non-examining physicians who rendered opinions concerning

4    plaintiff's limitations opined that plaintiff can perform light work.  Plaintiff has not identified, and the

5    Court is not aware of, any opinion in the record from any other physician -- treating or otherwise --

6    that maintains that plaintiff is unable to perform light work.  Statements from physicians concerning

7    the nature, severity, and effects of the symptoms of which a claimant complains are among the

8    factors to be considered in weighing a claimant's credibility.  See Thomas, 278 F.3d at 958-59;

9    Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); see also 20 C.F.R. §§

10   404.1529(c)(1), 416.929(c)(1).  Thus, it was proper for the ALJ to consider the opinion evidence

11   of the physicians in the record.  The opinions of the examining and nonexamining physicians that

12   plaintiff retains the RFC to perform light work constituted a clear and convincing reason to discount

13   plaintiff's testimony concerning the severity of his symptoms.

14   This reason by the ALJ to discredit plaintiff's subjective symptom testimony is supported

15   by the record, and must be upheld.  See Green, 803 F.2d at 532.  Remand is not warranted on

16   this issue.

17

18   **B.    STEP FOUR AND STEP FIVE DETERMINATIONS**

19   Plaintiff also argues that the ALJ erred in concluding that plaintiff can perform his past

20   relevant work as a fast food restaurant worker because: (1) plaintiff "consistently described [his

21   fast food restaurant] work in the medium exertional level" [JS at 5 (internal citations omitted)]; (2)

22   the ALJ improperly relied on an unsigned Medical/Vocational Decision Guide in the record [id.];

23   (3) the ALJ incorrectly "rel[ied] 100% on the opinion of a state agency consultant physician" [JS

24   at 6]; and (4) the ALJ failed to consider plaintiff's statements about his limitations, including fatigue

25   and side effects from medications.  [JS at 6-7.]  In addition, plaintiff contends that the ALJ, in

26   making his step five determination, erred by failing to call a vocational expert to testify as to

27   whether plaintiff's limitations "would substantially erode the job base such that no occupations

28   would exist given the totality of [] Plaintiff's limitations."  [JS at 7-8.]

1     At step four, the ALJ must determine whether plaintiff's RFC allows him to return to his past

2     relevant work.  Lester, 81 F.3d at 828 n.5; 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

3     Plaintiff has the burden of establishing that he cannot "return to his former *type* of work and not

4     just to his former job."  Villa v. Heckler, 797 F.2d 794, 798 (9th Cir.1986) (emphasis in original).

5     However, the ALJ must make findings of fact regarding plaintiff's RFC, the physical and mental

6     demands of plaintiff's past work, and whether plaintiff can return to his past relevant work "either

7     as actually performed or as generally performed in the national economy."  Pinto v. Massanari,

8     249 F.3d 840, 844-45 (9th Cir. 2001); Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002).  A

9     claimant is typically the primary source for determining how a job was actually performed.  Social

10    Security Ruling[6] 82-62.  But when determining how a job is generally performed, the ALJ can rely

11    on the descriptions given by the Dictionary of Occupational Titles ("DOT") or a vocational expert.

12    See SSR 82-62; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  The DOT raises a

13    presumption as to job classification requirements.  See Johnson, 60 F.3d at 1435; see also Pinto,

14    249 F.3d at 845-46 ("the best source for how a job is generally performed is usually the [DOT]")

15    (internal citations omitted).  If a claimant proves at step four that his RFC does not allow him to

16    perform his past relevant work, the burden shifts to the ALJ at step five to establish that plaintiff is

17    not disabled because he can perform other substantial gainful work that exists in significant

18    numbers in the national economy.  20 C.F.R. §§ 404.1520, 404.1560, 416.920, 416.960.

19    In a Work History Report dated September 25, 2009, plaintiff stated that he worked as a fast

20    food attendant from 1980 to 1991, and as a fast food porter from 2000 to 2008.  [AR at 144-50.]

21    As an attendant, he "prepared fast food and attended to the customer," and as a porter, he picked

22    up trash, stocked products, and "clean[ed] food areas."  [AR at 144-45.]  He stated that in both jobs,

23    he spent the following number of hours out of each workday performing the following activities: 8

24    hours walking and/or standing; no hours sitting; 1 hour climbing; 2 hours stooping; 1 hour kneeling;

25

26    _____

27    [6]     Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute
Social Security Administration interpretations of the statute it administers and of its own
regulations," and are given deference "unless they are plainly erroneous or inconsistent with the

28    Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

2 hours crouching; 1 hour handling; 3 hours reaching; and 5 hours writing, typing, or handling small objects. [AR at 145-46.] The only difference plaintiff noted in the postural demands of the two jobs was that as an attendant, he did not spend any time crawling during each workday, but as a porter, he spent 2 hours doing so. [Id.] He further stated that both jobs required him to lift things for one-third of his workday, as well as lift food products weighing over 45 pounds and carry them between 10 and 15 feet. [Id.]

In his decision, the ALJ found at step four that plaintiff "is capable of performing past relevant work as a fast food restaurant worker." [AR at 18.] The ALJ stated that "[i]n comparing [plaintiff's] [RFC] with the physical and mental demands of this work, ... [plaintiff] is capable to perform it as generally performed as noted by the State agency vocational specialist at Exhibit 3E." [Id.] Exhibit 3E in the record is an unsigned Medical/Vocational Decision Guide that classifies plaintiff's past relevant work of "fast food" as light work and opines that plaintiff can perform his past relevant work as generally performed.[7] [AR at 132-34.] However, neither the ALJ nor the vocational specialist who completed the Decision Guide specified whether -- in determining that plaintiff can perform his past relevant work as generally performed -- he or she was referring to plaintiff's work as a fast food attendant, a fast food porter, or both.[8] [See AR at 18, 132-34.]

As an initial matter, to the extent plaintiff argues that the ALJ erred by failing to consider his statements about his symptoms and his side effects from medications in determining whether he can perform his past relevant work, plaintiff's argument fails because the ALJ's discounting of plaintiff's credibility is supported by substantial evidence, discussed supra. In addition, plaintiff cites no authority in support of his contention that "the ALJ has committed reversible error by relying 100% on the opinion of a state agency physician." [JS at 6.] As discussed above, the ALJ considered all of the physician opinions in the record in making his RFC determination, and it was

---

[7]   The vocational specialist also opined that plaintiff can perform his past relevant work as actually performed. [AR at 132.]

[8]   In addition, neither the ALJ nor the vocational specialist cited any job number in the DOT corresponding to plaintiff's past relevant work. [See AR at 18, 132-34.]

1    proper for him to consider the physicians' assessments of the nature, severity, and effects of the

2    symptoms of which plaintiff complains.  See Thomas, 278 F.3d at 958-59; Light, 119 F.3d at 792.

3          Next, as to plaintiff's assertion that the ALJ erred by relying on the unsigned

4    Medical/Vocational Decision Guide, and insofar as plaintiff contends that the ALJ erred by failing

5    to classify his past relevant work as "medium work,"[9] the Court finds that even if plaintiff's

6    contentions are correct,[10] such errors are harmless because the ALJ's alternative finding at step

7    five -- that plaintiff can perform other jobs that exist in significant numbers in the national economy

8    -- is supported by substantial evidence.  See Robbins v. Comm'r Soc. Sec. Admin., 648 F.3d 721,

9    728 (9th Cir. 2011) (internal citation omitted) (an error is harmless where it is "inconsequential to

10   the ultimate nondisability determination"); see also McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir.

11   2011) (citing Shinseki v. Sanders, 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009))

12   ("the burden is on the party attacking the agency's determination to show that prejudice resulted

13   from the error").

14         Plaintiff contends that, at step five, the ALJ erred in failing to obtain vocational expert

15   testimony on the issue of whether plaintiff's limitations "would substantially erode the job base such

16   that no occupations would exist given the totality of [] Plaintiff's limitations."  [JS at 7-8.]  Defendant

17   counters that the ALJ was not required to call a vocational expert because he properly relied on

18   the Medical Vocational Guidelines at 20 C.F.R., Part 404, Subpart P, Appendix 2 as a "framework

19   to consider Plaintiff's additional non-exertional limitations."  [JS at 15.]

20         At step five, there are two ways the ALJ can show that there are significant numbers of jobs

21   the plaintiff can still perform: by the taking of vocational expert testimony or by reliance upon the

22   Medical-Vocational Guidelines.  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  The

23

24         9    20 C.F.R. §§ 404.1567(c), 416.967(c) define "medium work" as work that involves "lifting
     no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25
25   pounds."

26         10   The Court notes that the Medical/Vocational Decision Guide defines plaintiff's past job as
     "fast food" without distinguishing between the jobs of fast food attendant and fast food porter, and
27   without citing any DOT description on which the preparer of the form relied.  [AR at 132-34.]  As
     such, the conclusion in the form that plaintiff's past work is properly classified as light work is
28   unsubstantiated.  Nevertheless, as discussed infra, these errors are harmless.

1   Medical-Vocational Guidelines (i.e., "the Grids") present, in table form, a short-hand method for

2   determining the availability and numbers of suitable jobs for a claimant. Tackett, 180 F.3d at 1101.

3   "The [G]rids categorize jobs by their physical-exertional requirements and consist of three tables,"

4   one for sedentary work, one for light work, and one for medium work. Id. Each Grid presents

5   various combinations of age, education, and work experience, which are relevant to a claimant's

6   ability to find work. Id. For each combination of these factors, the Grids "direct a finding of either

7   'disabled' or 'not disabled' based on the number of jobs in the national economy in that category

8   of physical-exertional requirements." Id.; see also 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(a).

9       However, the Grids may be used to direct a finding of disability or non-disability only "where

10  they completely and accurately represent a claimant's limitations." Tackett, 180 F.3d at 1101.

11  Because the Grids are based solely on strength or exertional factors (Holohan v. Massanari, 246

12  F.3d 1195, 1208 (9th Cir. 2001)), "they may not be fully applicable" where a claimant has

13  nonexertional limitations. 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e). The Commissioner

14  "has defined 'exertional activity' as primarily involving the strength requirements of sitting, standing,

15  walking, lifting, carrying, pushing, and pulling." Cooper, 880 F.2d at 1156 (citing SSR 83-10). A

16  nonexertional activity, by contrast, is an activity other than "the primary strength activities," and

17  includes climbing, balancing, stooping, kneeling, crouching, and crawling. SSR 83-10. Despite the

18  fact that the Grids "may not be fully applicable" where nonexertional limitations exist,

19          where an individual has an impairment or combination of impairments
            resulting in both strength limitations and nonexertional limitations, the
20          [Grids] are considered in determining first whether a finding of disabled
            may be possible based on the strength limitations alone and, if not, the
21          [Grid] reflecting the individual's maximum residual strength capabilities,
            age, education, and work experience provide a framework for
22          consideration of how much the individual's work capability is further
            diminished [as a result of his] nonexertional limitations.

23

24  20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2).

25      SSR 83-14 "clarifies how [the Grids] provide a framework for decisions concerning [such

26  individuals]," stating that "[a] particular ... nonexertional limitation may have very little effect on the

27  range of work remaining that an individual can perform," in which case the individual would "come[]

28  very close to meeting a table rule which directs a conclusion of 'Not disabled.'" SSR 83-14. "On

the other hand, a[] nonexertional limitation may substantially reduce a range of work to the extent that an individual is very close to meeting a table rule which directs a conclusion of 'Disabled.'" Id. Examples of "nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base" include an "inability to ascend or descend scaffolding, poles, and ropes[,] [and an] inability to crawl on hands and knees." Id.

In determining how much a nonexertional limitation affects "the range of work remaining that an individual can perform," SSR 83-14 states that publications such as the DOT "will be sufficient for relatively simple issues." Id. (citing 20 C.F.R. §§ 404.1566, 416.966). "Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base," however, "the services of a [vocational specialist] will be necessary." Id. "Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in [the Grids] would not be affected." Id.

Here, the ALJ noted in his decision that "[w]hen the claimant ... has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking," citing SSR 83-12 and SSR 83-14. [AR at 18.] The ALJ then stated that considering plaintiff's age (a younger individual as of his alleged disability onset date), education (high school graduate able to communicate in English), work experience (in unskilled jobs), and RFC (for light work), Medical-Vocational Guideline 202.20 would mandate a finding of "not disabled" if plaintiff retained the RFC to perform the full range of light work. [AR at 18-19.] Because the ALJ determined that plaintiff's RFC includes additional nonexertional limitations, however, the ALJ considered the extent to which those limitations would erode the occupational base of unskilled light jobs. [AR at 19.] The ALJ found that plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled light work," and that plaintiff could therefore "perform unskilled light work such as collator operator, housekeeping cleaner, and photocopy-machine operator as described in [DOT Nos. 208.685-010, 323.687-014, and 207.685-014, respectively]." [AR at 19 (citing AR at 134).] Thus, the ALJ concluded that a finding of "not disabled" was appropriate "under the framework of [Medical-Vocational Guideline 202.20]." [Id.]

13

1       The ALJ's consultation of the DOT and use of Medical-Vocational Guideline 202.20 as a

2  "framework" for his decision at step five is supported by substantial evidence.  The DOT classifies

3  the jobs of collator operator, housekeeping cleaner, and photocopy-machine operator as "light

4  work" with no or only occasional balancing, climbing, stooping, kneeling, crouching, and crawling;

5  no climbing on ladders, ropes, or scaffolds; and no exposure to extreme cold or vibration.  See

6  DOT No. 208.685-010; DOT No. 323.687-014; DOT No. 207.685-014.  These requirements are

7  consistent with the ALJ's RFC determination for plaintiff.  Moreover, as to the remaining restriction

8  in plaintiff's RFC -- that he avoid frequent or prolonged exposure to hepatotoxins -- plaintiff has not

9  identified how such a restriction would render him unable to perform any of the unskilled light jobs

10  the ALJ identified.  [See AR at 4-7.]  Given that there is no evidence before the Court that the

11  identified unskilled light jobs have any requirements that conflict with plaintiff's nonexertional

12  limitations, substantial evidence supports the ALJ's determination that plaintiff's nonexertional

13  limitations "have little or no effect on the occupational base of" jobs such as those of collator

14  operator, housekeeping cleaner, and photocopy-machine operator.  Under SSR 83-14, which the

15  ALJ cited in his decision, it therefore was not necessary for the ALJ to rely on the services of a

16  vocational expert to make his step five determination.  Remand is not warranted on this issue.

## VI.

## CONCLUSION

       **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

       **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

       **This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 20, 2012

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

14